United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDEPENDENT LIVING RESOURCE CENTER SAN FRANCISCO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., et al., <br><br> Defendants. | Case No. 18-cv-06503-RS <br><br> **ORDER GRANTING MOTION TO COMPEL ARBITRATION, DENYING MOTION FOR LEAVE TO AMEND, AND DENYING DISCOVERY MOTIONS.** |

**I. INTRODUCTION**

Plaintiffs[1] bring this ADA action on behalf of Bay Area residents who were deterred from using the Uber App because of the inferior and discriminatory service it allegedly provides to wheelchair users. In February 2019, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") moved to compel arbitration of this action. That motion was denied without prejudice. Uber was, however, granted leave to conduct discovery regarding the existence of an agency relationship between Plaintiffs and persons who tested the Uber App prior to the filing of this lawsuit.

Plaintiffs now move (1) for leave to file a Second Amended Complaint ("SAC") and (2) to quash discovery requests propounded by Uber. Uber opposes both motions and moves (1) to compel Plaintiffs to respond to the aforementioned discovery requests, and (2) to compel

---

[1] Plaintiffs in this matter are: Independent Living Resource Center San Francisco; Community Resources for Independent Living; Judith Smith; Julie Fuller; and Sascha Bittner.

arbitration of Plaintiffs' claims. For the reasons set forth below, the motion to compel arbitration is granted. All other motions are denied as moot.

**II. BACKGROUND**

**A. Procedural Background**

This action was originally filed in federal court in October 2018, however the Amended Complaint filed on January 11, 2019 is the operative complaint. On February 4, 2019, Uber moved to compel arbitration based on, among other things, the existence of a purported agency relationship between Plaintiffs and persons who tested the Uber App prior to the filing of this action. The motion was dismissed without prejudice on May 6, 2019. Uber was, however, granted leave to conduct limited discovery regarding "(1) the existence of a possible agency relationship between Plaintiffs and the testers, and (2) whether these testers agreed to Uber's mandatory arbitration clause." Order Denying Motion to Compel Arbitration 1. These discovery efforts quickly ran aground. While Plaintiffs initially responded to several of Uber's interrogatories, they now seek to quash Uber's remaining discovery requests. Uber opposes this motion to quash and moves to compel Plaintiffs to respond.

Plaintiffs also move for leave to file an SAC in order to "clarify the facts on which Plaintiffs rely to establish their claims in this action." Mot. Leave to File SAC 1. They specifically seek to remove any reference to testing of the Uber App from their complaint. In an order issued on June 24, 2019, the court observed that it "appear[ed] appropriate to revisit Uber's motion to compel alongside Plaintiffs' motion to quash and motion for leave to amend." Order 1. Accordingly, that order set a deadline for Uber to renew its motion to compel arbitration, should it so choose. On July 1, 2019, Uber renewed its motion to compel arbitration. The matter was set for hearing on the same day as the motion for leave to amend and the competing discovery motions.

**B. Factual Background**

This action arises from Uber's alleged provision of inferior and discriminatory service to people who use wheelchairs. Although Uber offers an option called "uberWAV" which allows customers in the Bay Area to request a ride from a wheelchair accessible vehicle, Plaintiffs

contend this option has a longer wait time than other Uber services, is often unavailable, and—unlike other Uber services—cannot be booked in advance. Plaintiffs, who claim never to have downloaded the Uber App, base these allegations on incidents they either witnessed firsthand or heard about from friends and family.

Despite the fact Plaintiffs have never personally downloaded the Uber App, the Amended Complaint states in pertinent part: "Plaintiffs tested a number of central locations around the Bay Area daily in September 2018 and October 2018. In Alameda County, a total of 60 tests during business hours reflected an average estimated wait time for an [u]berWAV of 29.7 minutes." Amend. Compl. ¶ 31. The Amended Complaint does not explain how Plaintiffs went about testing wait times without downloading the app and agreeing to the Terms of Use. Plaintiffs have since conceded that the person responsible for testing the Uber App was in fact Plaintiffs' agent. This agent was a paralegal at Disability Rights Advocates by the name of Carson Turner. Plaintiffs also admit that Ms. Turner agreed to Uber's Terms of Use, but emphasize that she downloaded the app "for personal use prior to the existence of th[e] agency relationship." Mot. Quash 1.

### III. LEGAL STANDARD

#### A. Motion for Leave to Amend

Under Rule 15(a), a party may amend its pleading once as a matter of course within 21 days of service of the pleading or 21 days of service of a responsive pleading or Rule 12 motion. *See* Fed. R. Civ. P. 15(a)(1). After that, amendment is permitted only with the opposing party's written consent or by leave of the court. *Id.* 15(a)(2). In general, courts "should freely give leave when justice so requires." *Id.* This rule is applied with "extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003), and nonmoving parties bear the burden of demonstrating why leave to amend should not be granted, *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). In deciding whether leave to amend should be granted, courts consider (1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B. Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") "provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,'" and "permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 4) (omission in original). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## IV. DISCUSSION

**A. Motion for Leave to Amend**

Plaintiffs proposed SAC removes all allegations relating to the testing of the Uber App by Plaintiffs' agents. The purpose of this amendment is "to clarify for Defendants and the Court, that, irrespective of an agency relationship between Plaintiffs and the testers," agency doctrine does not bind Plaintiffs to the arbitration agreement entered by the testers because "the injuries at issue are not dependent on the conduct of the testers and occurred independent of any agency relationship." Mot. Leave to File SAC 2. Uber opposes Plaintiffs' motion for leave to file an SAC on the grounds that it is the product of bad faith. There is, however, no need to reach the parties' competing arguments regarding whether Plaintiffs are acting in bad faith because the motion suffers from another, ultimately fatal, flaw: it is futile. The purpose of this motion is to try to bolster Plaintiffs' argument that they are not bound by the arbitration agreement entered into by Ms. Turner. As explained below, this argument fails regardless of whether they are permitted to file an SAC. Accordingly, this motion is denied as moot.

**B. Motion to Compel Arbitration**

It is well-settled under California law that a principal may be bound by an agreement made by an agent within the scope of the agency relationship. *See Mesler v. Bragg Mgmt.*, 39 Cal. 3d

290, 303 (Cal. 1985); *Bank of Am. Nat'l Trust & Savings Ass'n v. Cryer*, 6 Cal. 2d 485, 489 (Cal. 1936). Arbitration agreements are no exception. *See Keller Constr. Co v. Kashani*, 220 Cal. App. 3d 222, 225-28 (Cal. Ct. App. 1990) (collecting cases). Therefore, a plaintiff who dispatches an agent to deal with a defendant on his or her behalf is bound by an arbitration agreement entered into by the agent in the course of those dealings. *See* Cal. Civ. Code § 2330 ("An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal.").

The existence of an agency relationship is a question of fact. *Larson v. Speetjens*, No. 05-3176, 2006 WL 2567873, at *7 (N.D. Cal. Sept. 5, 2006). No formalities are required to form an agency relationship, rather "conduct alone can be sufficient to create such a relationship." *Id.* (citing *Malloy v. Fong*, 37 Cal. 2d 356, 372 (Cal. 1951)). Where a person indisputably acted on a plaintiff's behalf, that person must be considered the plaintiff's agent. *Tamsco Properties, LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015) (holding that because "Appellants admitted that the affiliated individuals who attended the conferences did so on their behalf," the attendees must be considered the Appellants' agents).

Plaintiffs concede that Ms. Turner was acting as their agent when she tested the wait times for the Uber App's various services. They nonetheless maintain that they are not bound by the arbitration agreement for two reasons. First, they argue the arbitration clause does not apply here because the agent's conduct was not the predicate for Plaintiffs' claims. In their view, "the relevant inquiry is whether the injury at issue is derivative of the agent's conduct." Opp. Renewed Mot. Compel 2. Plaintiffs, however, fail to identify any authority which endorses this view. Instead, they distill this rule from the facts of various agency cases.

For example, Plaintiffs contend that in *Tamsco Properties, LLC v. Langemeier*, 597 Fed. App'x 428, 429 (9th Cir. 2015), "the claims arose from the purchase of investments, which was done in reliance on information the plaintiffs would not have obtained if their agents had not accepted the arbitration clause." Opp. Renewed Mot. Compel 3. Similarly, in *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.*, 47 Cal. App. 4th 237, 243 (Cal. Ct. App. 1996),

CASE NO. 18-cv-06503-RS

5

"the claims arose from the provision of medical care which would not have been obtained if the agent had not accepted the arbitration clause." Opp. Renewed Mot. Compel 3. Plaintiffs' attempt to derive a new rule from the facts of these cases is unconvincing. The conventional test for determining whether Plaintiffs are bound by the arbitration agreement turns on whether the agent was acting within the scope of the agency when he or she agreed to be bound. The cases discussed in Plaintiffs' opposition to their renewed motion provide no meaningful basis to deviate from this rule.

Second, Plaintiffs contend that the agency exception cannot apply here because it would lead to an inequitable result. For example, Plaintiffs argue, they could be forced to arbitrate any claim against Uber "no matter how attenuated or entirely unrelated to the agent's actions" it may be. Opp. Renewed Mot. Compel 3. The scope of the arbitration agreement is, however, a separate legal question. Here, the question is whether Plaintiffs are bound by the agreement *at all*. Under agency doctrine, Plaintiffs are bound to the same extent as the agent who acted on their behalf. While Plaintiffs argue that it would be unfair to force them to arbitrate, for example, a tort action against Uber that was completely unrelated to the testing of the Uber App by Ms. Turner, this equity argument applies with equal force regardless of whether an agent was used.

Finally, Plaintiffs contend that it would be absurd to hold that they "somehow lost the right" to pursue their claims in federal court as soon as Ms. Turner used the Uber App to gather evidence. Opp. Renewed Mot. Compel 5. At oral argument, Plaintiffs specifically argued that granting Uber's motion could lead to a situation where a plaintiff seeking to sue Uber could be thrown out of court simply because the law firm representing him or her used Uber to deliver chambers copies to the court. Although the chambers copy hypothetical is concerning, it is a far cry from the present situation. Here, Plaintiffs dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination. Plaintiffs then proceeded to file a complaint that specifically referenced the data they collected from the Uber App. Under such circumstances, there is nothing inequitable about binding Plaintiffs to the agreement which gained them access to the Uber App in the first place.

In sum, the central inquiry is whether Ms. Turner was acting within the scope of the

agency when she tested the Uber App. Plaintiffs concede that she was.[2] There is no dispute that Uber's terms and conditions agreement is a "a contract evidencing a transaction involving commerce" subject to the FAA. 9 U.S.C. § 2. Accordingly, Plaintiffs are bound by the arbitration agreement to the same extent as their agent. The motion to compel arbitration is therefore granted.[3]

### V. CONCLUSION

For the reasons set forth above, the motion to compel arbitration is granted and the action is, accordingly, stayed. Plaintiffs' motion for leave to amend and the parties competing discovery motions are denied.

**IT IS SO ORDERED**.

Dated: July 30, 2019

_____
RICHARD SEEBORG
United States District Judge

---

[2] The parties' briefing on other associated motions raised the possibility that Plaintiffs may not be bound by the arbitration agreement because Ms. Turner downloaded the Uber App and agreed to the Terms of Use *before* she became Plaintiffs' agent. Plaintiffs, however, do not press this argument in their opposition to the renewed motion. In any event, Uber has presented evidence that the Terms of Use state that "by accessing or using the Services, you [the user] confirm your agreement to be bound by these Terms." Barajas Decl., Ex. 1 § 1. Accordingly, it would appear Ms. Turner reaffirmed the contract each time she opened the Uber App.

[3] The parties' competing discovery motions are denied as moot in light of the present order compelling arbitration of Plaintiffs' claims.